## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF GEORGIA
## STATESBORO DIVISION

KENNETH GLENN,

        Plaintiff,

    v.

COMMISSIONER GREG DOZIER, et al.,

        Defendants.

CIVIL ACTION NO.: 6:20-cv-40

## REPORT AND RECOMMENDATION

This matter is before the Court on Defendants' Motion for Summary Judgment, filed on April 26, 2021.  Doc. 52.  Plaintiff filed a Response in opposition.[1]  Doc. 54.  Defendants filed a Reply.[2]  Doc. 55.  For the following reasons, I **RECOMMEND** the Court **GRANT** Defendants' Motion for Summary Judgment, **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment, and **DENY** Plaintiff *in forma pauperis* status on appeal.

## PROCEDURAL HISTORY

Plaintiff originally filed this matter in the Middle District of Georgia on February 27, 2019.  Doc. 1.  On September 20, 2019, District Judge Marc Treadwell adopted in part the Report and Recommendations made by Magistrate Judge Charles Weigel.  Doc. 9.  As a result, Plaintiff's due process claim about the grievance process and the official capacity claim against

---

[1]    Plaintiff's counsel filed a 43-page brief in support of the opposition to Defendants' Motion for Summary Judgment, far in excess of the 26-page limit imposed by the Court's Local Rules.  Local R. 7.1.  Counsel did not seek leave of court to do so.  Despite the violation of the Local Rules, I have considered the entirety of Plaintiff's opposition brief.

[2]    Defendants note in their Reply that Defendant Wanita Sharpe's last name is misspelled in Plaintiff's Complaint and his Response.  Doc. 55 at 4.  The Court notes Defendant Sharpe's last name is misspelled on the docket and **DIRECTS** the Clerk of Court to correct the spelling to "Sharpe."

Defendant Dozier were dismissed.  Doc. 9 at 6, 8.  Judge Treadwell then ordered Plaintiff's case transferred to the Southern District of Georgia after Defendants filed a motion to dismiss for improper venue.  Docs. 23, 32.  The case was transferred to this District on April 16, 2020. Doc. 33.  Defendants now move for summary judgment on Plaintiff's claims.  Doc. 52.

## PLAINTIFF'S CLAIMS

Plaintiff asserted six claims in his original Complaint arising from when he was incarcerated at Georgia State Prison ("GSP").  Doc. 1.  Claim One set forth a due process claim against Defendants Dozier, Allen, Toole, and Howard for not following the grievance process and, therefore, denying Plaintiff the opportunity to complain about problems in the prison. Doc. 1 at 10.  Claim Two names Defendants Dozier, Toole, Allen, and Howard and alleges Plaintiff told Defendants Allen and Toole he (Plaintiff) had been raped and beaten at a prior institution (Johnson State Prison) because he informed on other inmates and he had certain medical needs due to the assaults.[3]  Plaintiff claims Allen and Toole told Plaintiff if he did not stay quiet about those matters, he would be placed in a worse housing assignment.  Plaintiff asserts Defendants' conduct constitutes deliberate indifference to Plaintiff's serious medical needs.  Id. at 12.  Claim Three set forth a claim of deliberate indifference to a serious medical need against Defendants Dozier, Toole, Allen, Bobbett, Pinero, Sharpe, Wilson, Thomas, Bradley, and Howard based on Defendants' refusal to provide sanitary wipes and placement of Plaintiff in a two-man cell (as opposed to an open dorm with easy shower access), which resulted in Plaintiff developing staph infections.  Id. at 13.  Although factually distinct, Claim Three also

---

[3]     Plaintiff explained during his deposition he was raped at Johnson State Prison prior to his transfer to GSP and the rape caused serious injuries.  As a result of the injuries, during the time he was at GSP, Plaintiff frequently defecated on himself, particularly at night.  Plaintiff maintains his injuries required him to use sanitary wipes or take frequent showers (which is not possible in two-man rooms at GSP), including during nighttime hours, or he would develop staph infections.

concerns an attempted attack on Plaintiff at GSP, which Plaintiff ostensibly claims was the result of his placement in a two-man cell that did not have continuous video surveillance.  Id.  Claim Four states Defendant Dozier, Toole, Allen, Bobbett, Pinero, and Sharpe were deliberately indifferent to Plaintiff's safety when they took away Plaintiff's shower chair, causing Plaintiff to fall in the shower.  Id. at 14.  Claim Five alleges Defendants Dozier, Toole, Allen, and Bobbett were deliberately indifferent to Plaintiff's safety by placing Plaintiff in a cell which lacked a panic button and sprinklers.  Id. at 15.  Claim Six alleges Defendants Dozier, Toole, Allen, Pinero, and Sharpe were deliberately indifferent to his serious medical need when they denied Plaintiff a MRI and CAT scan after he fell down the stairs and sustained injuries.  Id. at 16.

Claim One was dismissed by Judge Treadwell in the Middle District of Georgia.  Doc. 9 at 9–10.  Furthermore, all claims against Defendants in their official capacities were dismissed.  Doc. 32.  The five remaining claims against Defendants in their individual capacities are still pending.

## UNDISPUTED MATERIAL FACTS

Local Rule 56.1 of the Southern District of Georgia provides a party moving for summary judgment must include "a separate, short, and concise statement of the material facts as to which it is contended there exists no genuine dispute to be tried as well as any conclusions of law thereof."  Local R. 56.1.  Defendants submitted a Statement of Material Facts in support of their Motion for Summary Judgment, in accordance with the Federal Rules of Civil Procedure and Local Rule 56.1, relying on Plaintiff's deposition and certain documents attached to Plaintiff's Complaint.  Doc. 52-2.

Plaintiff, in his response to the Motion, provided his own Counterstatement of Material Facts, though only a few of those assertions were supported by citations to the record.[4]  Doc. 54; see Scoggins v. Arrow Trucking Co., 92 F. Supp. 2d 1372, 1373 n.1 (S.D. Ga. 2000) (finding, under Local Rule 56.1 and Eleventh Circuit precedent, "all unopposed fact statements supported by the evidentiary materials of record are deemed admitted"); see also Johnson v. City of Fort Lauderdale, 126 F.3d 1372, 1373 (11th Cir. 1997) (noting the Eleventh Circuit, who has a similar rule requiring a submission of relevant facts, is not obligated to "cull the record" to find "facts not included in the statement of fact.").  In light of these circumstances, the Court identifies the following undisputed, material facts for the purposes of evaluating Defendants' Motion for Summary Judgment:

In 2017, Plaintiff was housed at Johnson State Prison, where he was raped.  Doc. 52-2 at 1–2.  Plaintiff was transferred to GSP on August 1, 2017, and was housed there until January 9, 2018.  Id.  As discussed above, Plaintiff's Claim One was dismissed when the matter was pending in the Middle District of Georgia.  Undisputed material facts related to each remaining claim are addressed here.

***Claim Two.***  Plaintiff's Claim Two concerns threats he received from Defendants Allen and Toole during a conversation with these Defendants on about October 25, 2017.  Doc. 52-1 at 26.  On that date, Defendants Allen and Toole came into Plaintiff's cell.  Id.  Plaintiff informed Allen and Toole about the rape at Johnson State Prison, his involvement in exposing an inmate scheme at Johnson State Prison, his medical needs, and his need for an open-dorm housing

---

[4]      Plaintiff cites to the allegations in his unsworn Complaint throughout his Response to Defendants' Motion for Summary Judgment.  However, the allegations in an unsworn complaint are not to be considered in resolving a motion for summary judgment.  See Chambliss v. Buckner, 804 F. Supp. 2d 1240, 1248 (M.D. Ala. 2011) ("Allegations in an unsworn complaint are not evidence for purposes of summary judgment and, thus, cannot be considered.") (citing Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986)).

placement.  Id.  Plaintiff informed these Defendants he regularly contracted staph infections because of his placement in a two-man dorm with no nightly shower access.  Id.  In response, Defendant Toole told Plaintiff he had better "keep [his] mouth shut" or they were going to put him somewhere he would not like.  Id. at 27.  Defendant Allen told Plaintiff he needed to ask somebody who he was, suggesting Plaintiff should ask others about Defendant Allen's reputation, in case Plaintiff doubted the sincerity of the threat.  Id.

*Claim Three.*  Plaintiff's third claim is essentially two claims in one.  The first part of Claim Three concerns Plaintiff's request for sanitary wipes and a medical provider's refusal to provide the wipes on the grounds Plaintiff's request was not medically justified.  Doc. 52-1 at 33. Plaintiff says the failure to give him sanitary wipes caused him to get a staph infection three times while at GSP.  Id. at 34.  Plaintiff did receive treatment for the infections and was put on antibiotics each time he contracted an infection.  Plaintiff described the treatment as a "solid-form penicillin" that would "kill anything."  Id.  The infections healed each time and, since leaving GSP, Plaintiff has never been given sanitary wipes and has had three or four more staph infections.  Id. at 34, 39–40.  Plaintiff asserts his medical needs required Defendants to provide him with sanitary wipes or place him in an open dorm with shower access.

The second part of the claim concerns Plaintiff being attacked by another inmate, Mr. Evans, on November 8, 2017.  Id. at 36.  Plaintiff testified Mr. Evans attempted to attack him on September 22, 2017, a portion of that incident was caught on video, and Defendant Thomas filed Prison Rape Elimination Act ("PREA") paperwork related to the incident.  Id.  Plaintiff also testified Defendant Wilson was aware of the September 22, 2017 attack.[5]  Id.  Plaintiff further

---

[5]     Plaintiff also testified: "Now, on 9/22/17, I had already told them that the gang members were out to get me because of the cell phone scheme at Johnson, they already knew it . . . ."  Doc. 52-1 at 35–36. Even construing this testimony in the light most favorable to Plaintiff, it is unclear who Plaintiff informed

testified that on October 25, 2017, he told Defendants Allen and Toole "about the Johnson Prison when I gave all of the authorities the cell phone scamming scheme at Johnson, and that they—all the gangs were having—you know, they were threatening to murder me because I gave them all to the authorities, and—." Id. at 26–27. Construing this testimony in the light most favorable to Plaintiff, Plaintiff informed Defendants Allen and Toole about threats made against him while he was at GSP on October 25, 2017. Even after Defendants Thomas, Wilson, Allen, and Toole became aware of the threats against Plaintiff, Plaintiff remained housed in the same two-man cell. On November 8, 2017, Mr. Evans attempted to attack Plaintiff a second time. Plaintiff was able to force Mr. Evans out of his cell and blocked the door to prevent further harassment. Id. Plaintiff contends this attack occurred because he was placed in a two-man cell at GSP, rather than an open dorm, despite the fact Defendants were aware of danger posed to Plaintiff by other inmates at GSP.[6]

**Claim Four.** Plaintiff's Claim Four concerns the confiscation of Plaintiff's shower chair on December 6, 2017. Id. at 43. Plaintiff waited several weeks to receive this chair after he was approved for one, and he filed a grievance about that delay. Id. at 42. Plaintiff had his chair for about one week when Defendant Sharpe confiscated it because Plaintiff wrote his name on the chair. Id. at 43. A couple weeks after the confiscation, on December 22, 2017, Plaintiff fell in the shower. Id. at 49. Plaintiff was sent to the prison's in-house medical facility. Id. at 49–50. Plaintiff's head was bleeding, though he states he did not require any stitches. Id.

---

about threats against him prior to September 22, 2017, or whether the threats occurred at Johnson State Prison or GSP. Therefore, even considering this portion of Plaintiff's testimony, there is not any material fact in the record demonstrating any Defendants were aware of any threats against Plaintiff prior to the September 22, 2017 incident.

[6]   While an open-dorm assignment might appear more dangerous than a two-man cell, Plaintiff's contention appears to be open dorms are subject to 24-hour surveillance (making such assignments safer), but two-man cells are not.

*Claim Five.*  Plaintiff's Claim Five concerns the lack of safety features in the cells at GSP, such as a lack of sprinklers and a lack of panic button.  Id. at 56.  In his deposition, Plaintiff admitted GSP did, in fact, have sprinklers and panic buttons in the cells, but he testified they did not actually work.  Id. at 57, 58.  Plaintiff also testified the cells' ceilings had asbestos, though Plaintiff admitted he did not suffer any injuries resulting from the alleged asbestos exposure.  Id. at 58.

*Claim Six.*  Plaintiff's Claim Six, a deliberate indifference to a serious medical need claim, concerns Plaintiff's fall in a stairwell.  Id. at 61.  Plaintiff was given a bottom-range profile (meaning he was to be housed on a lower level) because he used a cane as a mobility aid. Id. at 50, 51–52.  Plaintiff's profile signaled to prison staff he was not to be housed in a dorm that required the use of stairs.  Id.  All dorms at GSP require the use of stairs to reach other areas of the prison.  Id. at 50.  Plaintiff fell in a stairwell on December 27, 2017.  Id. at 61.  After the fall, he was sent to a hospital outside of the prison, where they performed x-rays to see if Plaintiff had any broken bones.  Id. at 53.  Plaintiff was "knocked out" when he fell, but he did not have other injuries.  Id. at 53–54.

## DISCUSSION

### I.  Legal Standard

Summary judgment "shall" be granted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  However, there must exist a conflict in substantial evidence to pose a jury question."  Hall v. Sunjoy Indus. Grp., Inc., 764 F. Supp. 2d 1297, 1301 (M.D. Fla. 2011) (citing

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986), and Verbraeken v. Westinghouse Elec. Corp., 881 F.2d 1041, 1045 (11th Cir. 1989)).  "If the evidence [produced by the nonmoving party] is merely colorable or is not significantly probative summary judgment must be granted."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242 at 249 (1986) (citations omitted).

The moving party bears the burden of establishing there is no genuine dispute as to any material fact and he is entitled to judgment as a matter of law.  See Williamson Oil Co., Inc. v. Philip Morris USA, 346 F.3d 1287, 1298 (11th Cir. 2003).  Specifically, the moving party must identify the portions of the record which establish there are no "genuine dispute[s] as to any material fact and the movant is entitled to judgment as a matter of law."  Moton v. Cowart, 631 F.3d 1337, 1341 (11th Cir. 2011).  When the nonmoving party would have the burden of proof at trial, the moving party may discharge his burden by showing the record lacks evidence to support the nonmoving party's case or the nonmoving party would be unable to prove his case at trial.  See id. (citing Celotex v. Catrett, 477 U.S. 317, 322–23 (1986)).  Once the party moving for summary judgment satisfies its initial burden, the burden shifts to the non-moving party to come forward with specific facts showing a genuine dispute for trial.  Hinson v. Bias, 927 F.3d 1103, 1115 (11th Cir. 2019).  In determining whether a summary judgment motion should be granted, a court must view the record and all reasonable inferences that can be drawn from the record in the light most favorable to the nonmoving party.  Peek-A-Boo Lounge of Bradenton, Inc. v. Manatee County, 630 F.3d 1346, 1353 (11th Cir. 2011).

## II.    Qualified Immunity

Defendants argue they are entitled to summary judgment because all of Plaintiff's claims are barred by qualified immunity.  Doc. 52 at 7–9.  "Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct 'does not

violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  Al-Amin v. Smith, 511 F.3d 1317, 1324 (11th Cir. 2008) (quoting Vinyard v. Wilson, 311 F.3d 1340, 1346 (11th Cir. 2002)); Lee v. Ferraro, 284 F.3d 1188, 1193–94 (11th Cir. 2002); see also Jones v. Fransen, 857 F.3d 843, 851 (11th Cir. 2017); Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  "[Q]ualified immunity shields from liability 'all but the plainly incompetent or one who is knowingly violating the federal law.'"  Fransen, 857 F.3d at 851 (quoting Lee, 284 F.3d at 1194).

To successfully assert a defense of qualified immunity, Defendants "must first prove that [they were] acting within [their] discretionary authority during the events in question."  Cottone v. Jenne, 326 F.3d 1352, 1357 (11th Cir. 2003), *abrogated in part on other grounds by* Randall v. Scott, 610 F.3d 701, 701 (11th Cir. 2010).  If Defendants do so, the burden shifts to Plaintiff to show Defendants are not entitled to qualified immunity.  Id. at 1358.  Here, Plaintiff does not dispute Defendants were acting within their discretionary authority.  Doc. 54 at 40.  Therefore, the burden has shifted to Plaintiff to show: (1) "relevant facts . . . set forth a violation of a constitutional right," and (2) Defendants "violated a constitutional right that was clearly established at the time of [their] conduct."  Taylor v. Hughes, 920 F.3d 729, 732 (11th Cir. 2019).

"Strict adherence to the order of those two inquiries is not required."  Fish v. Brown, 838 F.3d 1153, 1162 (11th Cir. 2016) (citing Pearson v. Callahan, 555 U.S. 223, 236 (2009)).  "In appropriate cases, it is within a district court's discretion to assume that a constitutional violation occurred in order to address, in the first instance, the question of whether such a presumed violation was clearly established on the date of the incident leading to the suit."  Id.  Even when there is a genuine factual dispute regarding whether a constitutional violation occurred, if the

9

defendant did not act in violation of clearly established law, then the claim will not proceed past summary judgment.  Ansley v. Heinrich, 925 F.2d 1339, 1348 (11th Cir. 1991) (citing Harlow, 457 U.S. at 818 ("[I]f the law is not clearly established, the official is entitled to summary judgment regardless of factual disputes.")).

The violation of a constitutional right is clearly established if a reasonable official would understand his conduct violates that right.  See Coffin v. Brandau, 642 F.3d 999, 1013 (11th Cir. 2011).  A plaintiff can meet the clearly established requirement in one of three ways:

> (1)    by pointing to a materially similar decision the Supreme Court, the Eleventh Circuit Court of Appeals, or of the supreme court of the state in which the case arose;
>
> (2)    by establishing that a broader, clearly established principle should control the novel facts of the case; or
>
> (3)    by showing the case is one of those rare ones that fits within the exception of conduct which so obviously violates the constitution that prior case law is unnecessary.

Powell v. Snook, No. 19-13340, 2022 WL 363887, *5 (11th Cir. 2022).  For the first and second methods, the plaintiff must point to decisional law.  Id.  For the second and third methods, the court will look for "obvious clarity," which refers to a "principle or provision so clear that, even without specific guidance from a decision involving materially similar facts, the unlawfulness of the officer's conduct is apparent."  Id.  "Obvious clarity" is a "narrow exception to the normal rule that only case law and specific factual scenarios can clearly establish a violation."  Id.

The Court addresses qualified immunity as to each pending claim and elects to address the second inquiry first—namely, whether Defendants violated a constitutional right that was clearly established at the time of their conduct.  Before doing so, it is important to note Plaintiff's response to Defendants' qualified immunity arguments is largely conclusory.  Doc. 54 at 39–42. At one point, Plaintiff states the "above cited caselaw in this Circuit clearly put the GSP

Defendants on notice that their conduct was a violation of clearly established law," ostensibly pointing to every case cited in Plaintiff's lengthy brief. Id. at 40. The Court will not cull Plaintiff's entire brief for authority supporting Plaintiff's position. See Harbert Int'l, Inc. v. James, 157 F.3d 1271, 1284 (11th Cir. 1998) ("In order to defeat the qualified immunity defense, it was incumbent upon [the plaintiff] to demonstrate the law was clearly established that what these defendants did, in this case, violated federal law."); Foy v. Holston, 94 F.3d 1528, 1532 (11th Cir. 1996) ("Plaintiffs cannot carry their burden of proving the law to be clearly established by stating constitutional rights in general terms."); Wall-DeSousa v. Johnson, No. 614CV1959ORL41DAB, 2016 WL 9444142, at *4 (M.D. Fla. Jan. 19, 2016) (finding the plaintiff fell "woefully short" of upholding burden on qualified immunity where the plaintiff merely cited to cases showing the recognition of a cause of action), aff'd sub nom. Wall-DeSousa v. Fla. Dep't of Highway Safety & Motor Vehicles, 691 F. App'x 584 (11th Cir. 2017).

Rather, the Court will focus on the authority cited by Plaintiff concerning the defense of qualified immunity. Specifically, Plaintiff cites the following cases: McBride v. Houston Cnty. Health Care Auth., 657 F. App'x 991 (11th Cir. 2016); Steele v. Shah, 87 F.3d 1266 (11th Cir. 1996); McElligott v. Foley, 182 F.3d 1248, 1257 (11th Cir. 1999); Greason v. Kemp, 891 F.2d 829 (11th Cir. 1990); Aldridge v. Montgomery, 753 F.2d 970 (11th Cir. 1985); and Diamond v. Owens, 131 F. Supp. 3d 1346 (M.D. Ga. Sept. 14, 2015). Doc. 54 at 40–41.

### A. Claim Two

In Claim Two, Plaintiff contends Defendants Dozier, Toole, Allen, and Howard violated Plaintiff's constitutional rights by telling him to stay quiet about his past sexual assault, his medical needs, and his dorm assignment. Plaintiff contends this conduct constitutes deliberate

indifference to his serious medical needs.  However, Plaintiff has not met his burden showing that any constitutional right violated by this conduct was clearly established.

  ***Materially Similar Case.***  Plaintiff fails to point to any materially similar case that would alert Defendants they were being deliberately indifferent to Plaintiff's serious medical needs by not acting on Plaintiff's complaints about his medical needs and his dorm assignment and further telling him he should keep quiet about the rape at Johnson State Prison.[7]  Plaintiff first cites to Aldridge v. Montgomery, 753 F.2d 970 (11th Cir. 1985), but Aldridge is factually distinguishable.  Doc. 54 at 41.  In Aldridge, the plaintiff raised claims related to a bleeding head injury he received during his arrest and complaints of headaches and dizziness several months later.  On appeal, the Eleventh Circuit determined that directed verdict in the defendants' favor was improper and remanded for the clams for further proceedings.  The medical needs at issue in Aldridge and the needs at issue in this case are vastly different.  Similarly, the potential treatments for these purported needs are vastly different.  Accordingly, Aldridge is not a materially similar case to the facts of the instant case.

  None of the other cases cited by Plaintiff are materially similar to this case either.  McBride v. Houston Cnty. Health Care Auth., cited by Plaintiff, involved "a headache and sore throat so painful that [the plaintiff] had been unable to eat or drink for days and a serious rash resulting in the skin on [the plaintiff's] lips peeling off—along with her screaming for help." 657 F. App'x 991 (11th Cir. 2016).  Both Steele v. Shah and Greason v. Kemp involved defendants discontinuing the prisoner-plaintiff's psychotropic medications without conducting

---

[7] Defendants offered alternative arguments in the event Plaintiff's second claim was characterized as a First Amendment retaliation claim.  Doc. 52 at 9.  In his Response, Plaintiff treats the claim as one of deliberate indifference and does not characterize the claim as a retaliation claim.  Moreover, the Complaint does not suggest Plaintiff intended to assert a retaliation claim.  Therefore, the Court treats Claim Two as deliberate indifference claims and does not consider Defendants' retaliation claim arguments further.

any significant assessment of the prisoner-plaintiff, where the prisoner-plaintiff had diagnosed and pronounced mental health needs and was a known suicide risk.  87 F.3d 1266 (11th Cir. 1996); 891 F.2d 829 (11th Cir. 1990).  In McElligot, also cited by Plaintiff, the plaintiff had been experiencing severe abdominal pain for six months due to undiagnosed colon cancer, for which the prison doctors only prescribed Tylenol and Pepto-Bismol, which were largely ineffective at treating the tremendous pain the plaintiff experienced.  182 F.3d at 1252–54.  None of these cases involved even remotely similar circumstances (i.e., a risk of potential staph infections arising from lack of access to preferred sanitary facilities), better yet "materially similar" facts.[8] Thus, Plaintiff has not been able to show a materially similar case which would inform Defendants here they had violated his constitutional rights.

**Obvious Clarity.**  Plaintiff has also failed to show any particular legal principle applies with "obvious clarity" here, such that the principle would provide notice that Defendants' conduct would amount to a constitutional violation.  Indeed, Plaintiff has not pointed to any precedent that establishes "with obvious clarity" untethered to the particularized facts that Defendants were constitutionally prohibited from telling Plaintiff to stay quiet about his past sexual assault, his medical needs, and his dorm assignment.

Thus, Plaintiff is unable to show Defendants' actions violated clearly established law as to Claim Two.  It is the burden of Plaintiff to show the right was clearly established, and Plaintiff

---

[8]     Plaintiff also cites Diamond v. Owens, 131 F. Supp. 3d 1346 (M.D. Ga. Sept. 14, 2015), but that case does not warrant much, if any, discussion here.  Diamond is an order issued by a District Judge in the Middle District of Georgia.  Doc. 54 at 39.  Only caselaw from the Supreme Court of the United States, the Eleventh Circuit Court of Appeals, or the highest court of the pertinent state can suffice to show a law was clearly established.  Long v. Slaton, 508 F.3d 576, 584 (11th Cir. 2007).  Therefore, citation by Plaintiff to Diamond is unavailing.  Moreover, Diamond dealt with entirely different facts: whether prison officials violated the rights of a transgender inmate with gender dysphoria, where the officials refused to provide treatment for those medical needs and punished and ridiculed the inmate.

has not done so.  See Coffin, 642 F.3d at 1013.  For these reasons, I **RECOMMEND** the Court **GRANT** Defendants' Motion for Summary Judgment on Plaintiff's Claim Two.

### B.    Claim Three

As explained above, Plaintiff's Claim Three consists of two independent theories: (1) access to sanitary wipes and shower facilities in an open dorm; and (2) exposing Plaintiff to an attack by another inmate due to Plaintiff's assignment to a two-man cell.  Each theory is addressed in turn.

> ### 1.    Defendants are entitled to qualified immunity for the denial of sanitary wipes and assignment of Plaintiff to a two-man cell.

Plaintiff contends Defendants Dozier, Toole, Allen, Bobbett, Pinero, Sharpe, Wilson, Thomas, Bradley, and Howard violated Plaintiff's constitutional rights when they denied his requests for sanitary wipes and housed him in a two-man cell, depriving him to easy access to shower facilities.  This portion of Plaintiff's Claim Three is simply a variation of Claim Two, equally focused on Plaintiff's purported medical needs and requests for sanitary wipes or reassignment to a dorm with ready access to shower facilities.  As with Claim Two, Plaintiff has not shown Defendants violated clearly established law as to this portion of Claim Three.

*Materially Similar Case.*  As an initial matter, none of the cases discussed above—Aldridge, McBride, Steele, Greason, or McElligot—are factually similar to Plaintiff's claims, and, therefore, do not demonstrate Defendants' conduct violated clearly established law. Plaintiff also cites to Brown v. Johnson, 387 F.3d 1344 (11th Cir. 2004), in his Response. Doc. 54 at 5–6, 12.  In Brown, the defendants completely withdrew plaintiff's treatment for his prescribed medication for HIV and hepatitis.  Brown is not materially similar to the facts before the Court.  Here, Plaintiff was never prescribed sanitary wipes and continued to receive treatment

for his staph infections.  Therefore, <u>Brown</u> is factually distinguishable from the facts of Plaintiff's Claim Three.

***Obvious Clarity.***  Plaintiff has also failed to show any particular legal principle applies with "obvious clarity" here, such that the principle would provide notice that Defendants' conduct would amount to a constitutional violation.  Plaintiff has not pointed to any precedent that establishes "with obvious clarity" untethered to the particularized facts that Defendants were constitutionally required to provide Plaintiff with sanitary wipes or move him a two-man cell to an open dorm with easier access to shower facilities.

Thus, Plaintiff is unable to show Defendants' actions violated clearly established law as to the first portion of Claim Three.  It is the burden of Plaintiff to show the right was clearly established, and Plaintiff has not done so.  <u>See</u> <u>Coffin</u>, 642 F.3d at 1013.

**2.  *Defendants are entitled to qualified immunity on Plaintiff's placement in a two-man cell.***

In the second portion of Claim Three, Plaintiff contends Defendants improperly placed him in a two-man cell, which resulted in an attempted attack by another inmate, Mr. Evans, on November 8, 2017.  The undisputed material facts are that prior to the November 8, 2017 attempted attack, Defendants Thomas and Wilson were aware of an earlier attempt by Mr. Evans to attack Plaintiff and Defendants Allen and Toole were aware of general threats against Plaintiff.  Even after Defendants Thomas, Wilson, Allen, and Toole became aware of the threats against Plaintiff, Plaintiff remained housed in the same two-man cell.  On November 8, 2017, Mr. Evans attempted to attack Plaintiff a second time.

***Materially Similar Case.***  None of the cases discussed above—<u>Aldridge</u>, <u>McBride</u>, <u>Steele</u>, <u>Greason</u>, or <u>McElligot</u>—are factually similar to Plaintiff's claims, in that none of those cases involve threats to inmate safety.  Plaintiff also cites <u>Farmer v. Brennan</u>, 511 U.S. 825

(1994), in his Response, in which a transgender plaintiff was beaten and raped by another inmate in their cell.  Doc. 54 at 39.  In <u>Farmer</u>, it was well known to the officers the general population of a higher security facility was more dangerous with a history of inmate assaults.  511 U.S. at 830.  Further, the defendants acknowledged the plaintiff was at higher risk of assault due to her appearance and her gender identity.  <u>Id.</u> at 830–31.  These facts indicated the officials were aware of facts showing the existence of a substantial risk of serious harm and they did, in fact, draw the inference, but chose to leave the plaintiff at risk in general population.  <u>Id.</u>

Here, the facts are materially different.  The undisputed material facts show that, prior to the attack on November 8, 2017, Defendants Thomas, Wilson, Allen, and Toole were aware of threats to Plaintiff as a result of his report about illegal activity at his previous prison but did not move him from his two-person cell.  However, <u>Farmer</u> deals with the danger a transgender plaintiff faced when moved to the general population of a higher-security penitentiary.  In this case, Plaintiff was the subject of threats due to his informing on other inmates at a different prison, not as a result of his gender identity.  Thus, the facts in <u>Farmer</u> are distinguishable from the facts of this case, such that <u>Farmer</u> would not have put Defendants on notice their conduct would constitute a constitutional violation.

Plaintiff also cites to <u>LaMarca v. Turner</u>, 995 F.2d 1526 (11th Cir. 1993).  Doc. 54 at 14.  The claims in <u>LaMarca</u> concerned a persistent and widespread pattern of violence at a particular institution, not individualized specific threats to particular plaintiffs.  955 F.2d at 1532–33.  Moreover, the portion of <u>LaMarca</u> cited by Plaintiff concerned the need for psychological counseling for rape victims at the institution in question, given the specific factual circumstances in that case.  <u>Id.</u> at 1544.  However, here, Plaintiff is not facing a prison overwhelmed by generalized violence.  Rather, Plaintiff's claim concerns threats directed only at him.  There is no

suggestion in this case there was a persistent and widespread pattern of violence at GSP that led to the attempted assault on November 8, 2017.  Furthermore, Plaintiff does not contend he needed and was denied psychological counseling following the sexual assault; Plaintiff's claims relate to the need for access to sanitary facilities due to injuries sustained in the assault.  Put simply, LaMarca did not involve materially similar facts, nor did any of the other cases cited by Plaintiff.

*Obvious Clarity.*  Plaintiff has also failed to show any particular legal principle applies with "obvious clarity" here, such that the principle would provide notice that Defendants' conduct would amount to a constitutional violation.  Plaintiff has not pointed to any precedent that establishes "with obvious clarity" untethered to the particularized facts that Defendants were constitutionally required to move him from a two-man cell to an open dorm, in light of known threats against Plaintiff.

Plaintiff is unable to show Defendants' actions violated clearly established law as to the first or the second portion of Claim Three.  It is the burden of Plaintiff to show the right was clearly established, and Plaintiff has not done so.  See Coffin, 642 F.3d at 1013.  For these reasons, I **RECOMMEND** the Court **GRANT** Defendants' Motion for Summary Judgment on Plaintiff's Claim Three.

### C.      Claim Four

Claim Four concerns the confiscation of Plaintiff's shower chair after Plaintiff wrote his name on the chair.  Plaintiff names Defendants Dozier, Toole, Allen, Bobbett, Pinero, and Sharpe in this claim.  Again, Defendants invoke the defense of qualified immunity, and, again, Plaintiff fails to demonstrate Defendants violated clearly established law.

***Materially Similar Case.***  None of the cases discussed above—<u>Aldridge</u>, <u>McBride</u>, <u>Steele</u>, <u>Greason</u>, or <u>McElligot</u>—are factually similar to Plaintiff's Claim Four, in that none of those cases involved the confiscation of an assistive device like a shower chair.  Plaintiff also cites to <u>Brown</u>, 387 F.3d at 1344, in which the defendants completely discontinued the plaintiff's prescribed medication for HIV and hepatitis.  Doc. 54 at 12.  However, Plaintiff admits the context of the case was unrelated since it involved withdrawn HIV treatments.  <u>Id.</u>  While the existing precedent only needs to place the constitutional question beyond debate and need not be directly on point, "judicial precedents are tied to particularized facts" in which minor variations can prove critical.  <u>Wade v. United States</u>, 13 F.4th 1217, 1226 (11th Cir. 2021).  In <u>Brown</u>, the defendants withdrew access to plaintiff's life-sustaining treatment.  In the instant case, Defendants confiscated a shower chair Plaintiff had only had a short time, and Plaintiff had been showering without a chair for weeks without incident before the fall.  <u>Brown</u> is, therefore, not materially similar to the facts in this case.  Plaintiff has not cited to any other materially similar case.

***Obvious Clarity.***  Plaintiff has also failed to show any particular legal principle applies with "obvious clarity" here, such that the principle would provide notice that Defendants' conduct would amount to a constitutional violation.  Plaintiff has not pointed to any precedent that establishes "with obvious clarity" untethered to the particularized facts that Defendants were constitutionally required to allow Plaintiff to keep his shower chair despite disciplinary infractions.

Thus, Plaintiff is unable to show Defendants' actions violated clearly established law as to Claim Four.  It is the burden of Plaintiff to show the right was clearly established, and Plaintiff

has not done so.  See Coffin, 642 F.3d at 1013.For these reasons, I **RECOMMEND** the Court

**GRANT** Defendants' Motion for Summary Judgment on Plaintiff's Claim Four.

### D.    Claim Five

Claim Five alleges Defendants Dozier, Toole, Allen, and Bobbett were deliberately

indifferent to prisoner safety by placing Plaintiff in a two-man cell with non-functional sprinklers

and panic buttons.

***Materially Similar Case.***  Even assuming this to be a constitutional violation, Plaintiff

has not pointed to any caselaw or other principle of law demonstrating Defendants' actions

violated clearly established law.  None of the cases discussed above—Aldridge, McBride, Steele,

Greason, or McElligot—are factually similar to Plaintiff's claims, in that none of those cases

involve safety devices in cells.  These cases are distinguishable from the instant case, which

focuses on the conditions of Plaintiff's confinement.  To carry his burden, Plaintiff was required

to point to cases which "demonstrate the law was clearly established that what these defendants

did, *in this case*, violated federal law."  Harbert Int'l, Inc., 157 F.3d at 1284; see also Foy, 94

F.3d at 1532.  He did not do so.  Thus, Plaintiff has not been able to show a materially similar

case which would inform Defendants here they had violated his constitutional rights by not

placing him in a cell with a panic button or sprinklers.

***Obvious Clarity.***  Plaintiff has also failed to show any particular legal principle applies

with "obvious clarity" here, such that the principle would provide notice that Defendants'

conduct would amount to a constitutional violation.  Plaintiff has not pointed to any precedent

that establishes "with obvious clarity" untethered to the particularized facts that Defendants were

constitutionally required to place Plaintiff in a cell with a panic button or sprinklers.

Thus, Plaintiff is unable to show Defendants' actions violated clearly established law as to Claim Five.  It is the burden of Plaintiff to show the right was clearly established, and Plaintiff has not done so.  See <u>Coffin</u>, 642 F.3d at 1013.For these reasons, I **RECOMMEND** the Court **GRANT** Defendants' Motion for Summary Judgment on Plaintiff's fifth claim.

### E.     Claim Six

Claim Six alleges Defendants Dozier, Toole, Allen, Pinero, and Sharpe were deliberately indifferent to Plaintiff's serious medical needs when they failed to honor his lower-range profile and denied him an MRI and CAT scan after he was injured falling down the stairs.

***Materially Similar Case.***  Even assuming this constituted a violation of Plaintiff's constitutional right, Plaintiff has not met his burden showing this right was clearly established. None of the cases discussed above—<u>Aldridge</u>, <u>McBride</u>, <u>Steele</u>, <u>Greason</u>, or <u>McElligot</u>—are factually similar to Plaintiff's claims, in that none of those cases involve disregard of a housing assignment profile.  And Plaintiff has not cited to any other materially similar case.  For this reason, Plaintiff has not been able to point to caselaw which shows the right at issue in Claim Six was clearly established.

***Obvious Clarity.***  Plaintiff has also failed to show any particular legal principle applies with "obvious clarity" here, such that the principle would provide notice that Defendants' conduct would amount to a constitutional violation.  Plaintiff has not pointed to any precedent that establishes "with obvious clarity" untethered to the particularized facts that Defendants were constitutionally required to honor Plaintiff's lower-range profile and provide Plaintiff medical scans which were not prescribed by a doctor.

Thus, Plaintiff is unable to show Defendants' actions violated clearly established law as to Claim Six.  It is the burden of Plaintiff to show the right was clearly established, and Plaintiff

has not done so.  See Coffin, 642 F.3d at 1013.  Therefore, qualified immunity bars all Plaintiff's

claims against Defendants.  Accordingly, I **RECOMMEND** the Court **GRANT** Defendants'

Motion for Summary Judgment.

**III.     Leave to Appeal *in Forma Pauperis***

The Court should also deny Plaintiff leave to appeal *in forma pauperis*.  Though Plaintiff

has, of course, not yet filed a notice of appeal, it is proper to address these issues in the Court's

order of dismissal.  See Fed. R. App. P. 24(a)(3) (trial court may certify an appeal of party

proceeding *in forma pauperis* is not taken in good faith "before or after the notice of appeal is

filed").

An appeal cannot be taken *in forma pauperis* if the trial court certifies the appeal is not

taken in good faith.  28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3).  Good faith in this context

must be judged by an objective standard.  Busch v. County of Volusia, 189 F.R.D. 687, 691

(M.D. Fla. 1999).  A party does not proceed in good faith when he seeks to advance a frivolous

claim or argument.  See Coppedge v. United States, 369 U.S. 438, 445 (1962).  A claim or

argument is frivolous when it appears the factual allegations are clearly baseless or the legal

theories are indisputably meritless.  Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v.

Gross, 984 F.2d 392, 393 (11th Cir. 1993).  An *in forma pauperis* action is frivolous and not

brought in good faith if it is "without arguable merit either in law or fact."  Moore v. Bargstedt,

203 F. App'x 321, 323 (11th Cir. 2006) (quoting Bilal v. Driver, 251 F.3d 1346, 1349 (11th Cir.

2001)); see also Brown v. United States, Nos. 4:07-cv-085, 40:3-cr-001, 2009 WL 307872, at

*1–2 (S.D. Ga. Feb. 9, 2009).

Based on the above analysis of Defendants' Motion for Summary Judgment, there are no non-frivolous issues to raise on appeal, and an appeal would not be taken in good faith. Thus, the Court should **DENY** Plaintiff *in forma pauperis* status on appeal.

## CONCLUSION

Because Defendants are entitled to qualified immunity, I **RECOMMEND** the Court **GRANT** Defendants' Motion for Summary Judgment, **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment, and **DENY** Plaintiff *in forma pauperis* status on appeal.[9]

Any objections to this Report and Recommendation shall be filed within 14 days of today's date. Objections shall be specific and in writing. Any objection that the Magistrate Judge failed to address a contention raised in the Complaint or an argument raised in a filing must be included. Failure to file timely, written objections will bar any later challenge or review of the Magistrate Judge's factual findings and legal conclusions. 28 U.S.C. § 636(b)(1)(C); Harrigan v. Metro Dade Police Dep't Station #4, 977 F.3d 1185, 1192–93 (11th Cir. 2020). To be clear, a party waives all rights to challenge the Magistrate Judge's factual findings and legal conclusions on appeal by failing to file timely, written objections. Harrigan, 977 F.3d at 1192–93; 11th Cir. R. 3-1. A copy of the objections must be served upon all other parties to the action.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not

---

[9]  Defendants make additional arguments about supervisory officials as not liable on the basis of *respondeat superior* and compensatory damages barred under the Prison Litigation Reform Act. Doc 52 at 10–13. Because the Court concludes Defendants have shown no dispute of material fact exists about the validity of the underlying claims, I do not need to reach these matters.

meeting the specificity requirement set out above will not be considered by a District Judge.  A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit.  Appeals may be made only from a final judgment entered by or at the direction of a District Judge.

**SO REPORTED and RECOMMENDED**, this 22nd day of February, 2022.

BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA